UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CLOUD 1, LLC,<br>417 Pine Street<br>Green Bay, WI 54301<br><br>        Plaintiff,<br><br>   v.<br><br>LA CROSSE COUNTY BOARD OF SUPERVISORS,<br>212 6th Street North<br>La Crosse, WI 54601<br><br>and<br><br>LA CROSSE COUNTY, WISCONSIN,<br>212 6th Street North<br>La Crosse, WI 54601<br><br>        Defendants. | Case No. 19-cv-590 |

## COMPLAINT

The plaintiff, Cloud 1, LLC ("Cloud 1"), by its attorneys, Husch Blackwell LLP, for its Complaint against the defendants, the La Crosse County Board of Supervisors (the "Board") and La Crosse County, Wisconsin (the "County") (collectively, the "Defendants") alleges:

## NATURE OF THE ACTION

1. This action arises out of the unlawful denial by the County, through its Board, of Cloud 1's application for a conditional use permit ("the Application") to construct a telecommunications tower together with related equipment, on property within the political subdivision of the County. The Defendants' action to deny the Application violated the Telecommunications Act of 1996, Pub. L. No. 104-014, 110 Stat. 56 (1996), and Wis. Stat. § 66.0404.

## THE PARTIES

2. Cloud 1 is a Wisconsin limited liability company authorized to do business within the State of Wisconsin.

3. The Board is the governing body of the County and possesses decision-making authority as to local zoning matters within the County's political subdivision. The Board's majority vote is necessary to grant a conditional use permit, such as the permit involved in this action.

4. The County is a political subdivision within the State of Wisconsin.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because of federal questions arising under the Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.*, and specifically 47 U.S.C. § 332(c). This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

6. This action presents an actual controversy under Article III of the United States Constitution and 28 U.S.C. § 2201 because the Defendants have violated federal law, in particular Cloud 1's federal rights granted under the Telecommunications Act of 1996.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## REQUEST FOR EXPEDITED REVIEW

8. Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), Cloud 1 seeks expedited review.

## STATEMENT OF FACTS

9. Federally licensed wireless communications carriers work to provide commercial mobile radio services, personal and advanced wireless services, and other telecommunications services, as those terms are defined under federal law, in Wisconsin, including in La Crosse

County. These carriers seek to facilitate the development of a wireless telecommunications networks in keeping with the goals of the Telecommunications Act of 1996.

10. FirstNet|First Responder Network Authority is an independent authority within the U.S. Department of Commerce. Authorized by Congress in 2012, its mission is to develop, build and operate the nationwide, wireless broadband communications network that equips first responders to save lives and protect U.S. communities. FirstNet is built in a public-private partnership that helps ensure short and long-term needs of the public safety community in the County.

11. Section 151 of the Telecommunications Act of 1996 establishes a national policy to "make available, so far as possible, to all people of the Unites States, without discrimination .... a rapid, efficient, nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. § 151. To meet these policy goals, wireless communications carriers seek to provide a myriad of wireless communications services to local businesses, public safety entities, and the general public. To advance national policies enumerated under 47 U.S.C. § 151, wireless communications carriers must create and maintain a network of digital "cell sites" each of which consists of antennas and related electronic communications equipment designed to send and receive radio signals.

12. For many Americans, wireless devices have become an indispensable replacement for traditional landline telephones. Even when Americans maintain both types of telephone service, Americans are increasingly opting to use wireless devices over their landline telephones.

13. Unlike cellular services using analog-based systems, digital technology converts voice or data signals into a stream of digits to allow a single radio channel to carry multiple

simultaneous signal transmissions. This allows wireless communications carriers to offer services unavailable in analog-based systems, such as secured transmissions and enhanced voice, high-speed data, paging and imaging capabilities as well as voice mail, call forwarding and call waiting.

14. Wireless devices utilizing all digital technology operate by transmitting a radio signal to antennas mounted on a tower, pole, building, or other structure. The antenna feeds the signal to electronic devices housed in a small equipment cabinet, or base station. The base station is connected by microwave, fiber optic cable, or ordinary telephone wire to a base station controller, which subsequently routes calls throughout the world.

15. To provide reliable service to a user, coverage from cell sites must overlap in a grid pattern resembling a honeycomb. If a wireless communications carrier cannot construct a cell site within a specific geographic area, it will not be able to provide service to its consumers within that area.

16. Engineers from the wireless communications carriers use sophisticated, established industry standard computer programs and extensive field testing to complete a propagation study, which shows where cell sites need to be located in order to provide service. The propagation study also considers the topography of the land, the coverage boundaries of neighboring cell sites and other factors. For a wireless network to perform well, cell sites must be located, constructed and operated so reliable coverage can be achieved. Only when the entire wireless network is operational will a mobile user have reliable service and uninterrupted communications throughout a given territory. If there is no functioning cell site within a given area, there will be no mobile wireless service for customers within that area, and mobile customers who travel into that area will experience an unacceptable level of mobile wireless service.

17. Cloud 1 is engaged in the business of development, ownership and operation of telecommunications towers which may serve as support structures for cell sites for the purpose of providing wireless communications services in the State of Wisconsin.

18. Cloud 1 determined there is a gap in wireless service coverage in the Town of Shelby, located within the County. This coverage gap is significant and must be remedied to provide consistent, reliable wireless communications service to users who live, work, or travel through this portion of the County, and expand the federal government's FirstNet|First Responder Network Authority.

19. Cloud 1 identified a site for a wireless communications tower that would support wireless service coverage in the Town of Shelby area. That site is on a parcel of property owned by D & G Servais Joint Revocable Trust dated October 14, 2011, located at W5050 Knobloch Road in the Town of Shelby.

20. D & G Servais Joint Revocable Trust dated October 14, 2011 approved and executed a lease for a portion of the W5050 Knobloch Road property with Cloud 1 to construct a communications tower.

21. The W5050 Knobloch Road property is zoned Agricultural. Under the County Zoning Code, communication towers are permitted in Agricultural zoning districts with a conditional use permit.

22. Cloud 1 filed the Application to construct a 250 foot communications tower that would support broadband internet services, expand the federal government's FirstNet|First Responder Network Authority and support wireless communications networks on a 10,000 square foot leased portion of the W5050 Knobloch Road property. The specific site is located adjacent to a semi-wooded area on abutting Knobloch Road. The proposed tower is a self-support tower that could accommodate the communications equipment of up to four (4)

DocID: 4826-2790-4925.1

telecommunications carriers. This tower facility was designed to utilize outdoor cabinets instead of an equipment shelter, which allows for a less obtrusive profile. The tower was to be lit to alleviate air traffic hazards. Traffic visiting the communications facility would be infrequent.

23. Cloud 1's Application fully complied with all applicable federal, state and local laws, regulations, and ordinances, including the FCC's regulations concerning radio frequency emissions. The Application was recommended for approval by the County Zoning, Planning & Land Information Department, which found the Application to be consistent with the County's zoning and mobile tower siting codes and applicable state and federal laws.

24. The Shelby Town Board discussed Cloud 1's Application for the W5050 Knobloch Road property at its April 23, 2019 meeting, but made no recommendation concerning the Application, realizing that authority to approve or deny it rested with the County.

25. The County's Planning, Resources and Development Committee held a public hearing on June 3, 2019 to allow public input relative to the plans for the proposed tower and to answer related questions. Although notice of the public hearing was provided under Wisconsin law and the County Ordinances, few residents attended the meeting, and only one resident spoke in opposition to the proposed tower.

26. Immediately following the June 3, 2019 public hearing, the County Planning, Resources and Development Committee considered Cloud 1's Application. Following its deliberation, the County Planning, Resources and Development Committee unanimously recommended approval of the Application by a 7-0 vote.

27. Cloud 1 learned of at least six letters and emails submitted to the Board dated from June 18-20, 2019. All six of those letters opposed the Application: five of the communications requested the Board deny the Application based upon health concerns, and the remaining communication requested denial based upon aesthetics.

28. On June 20, 2019, Application came before the Board for consideration. The public was not afforded the opportunity to speak at the Board meeting; however, thirteen of the twenty-two members of the Board who voted on the Application offered comments as part of their deliberation.

29. Many of the Board members who spoke on the Application did so based on health concerns. Those members and concerns included:

(a) Supervisor Rick Cornforth, who is the Chair of the Planning, Resources and Development Committee, indicated that he intended to reverse his Planning, Resources and Development Committee vote to approve the Application to a vote of denial at the Board level. Supervisor Cornforth cited concerns of safety and health concerns as the reason for changing his vote. He cited his opposition to the Application on his belief that the American Cancer Society was inconclusive in its findings of whether cell towers cause cancer.

(b) Supervisor Peggy Isola also raised safety and health concerns, noting that she was concerned with conclusions in various American Cancer Society reports. Supervisor Isola also raised concerns that the topography of the W5050 Knobloch Road property made the proposed tower location a greater health and radio-frequency concern, given the conclusions of the American Cancer Society, and due to the multi-story condominiums near the proposed tower. Supervisor Isola expressed concern that the Application did not adequately address radio frequency effects to those who would come into close proximity of the tower. She also voiced concern that cell tower conditional use applications should have a greater notice requirement, due to health concerns associated with those installations.

(c) Supervisor Patrick Barlow expressed concern over an "annotated bibliography of scientific articles regarding safety" which he reviewed in conjunction with the Application, noting that inconclusive studies by the American Cancer Society does not make cell towers safe.

(d) Supervisor Monica Kruse noted when neighborhood opposition exists, even though the law mandates safety and health concerns are not a valid reason to deny a cell tower application, it is in Cloud 1's best interests to find another location, given that Cloud 1 would have future requests before the Board.

(e) Supervisor Maureen Freedland discussed how the Application caused her to have concerns over safety and cancer risks, noting that a denial of the Application would send a message to the legislature that it needs to revisit whether towers pose a health and safety risk to the public.

30. Besides the discussions surrounding health and safety, several Board Members discussed the potential ramifications of denying the Application, noting, among other things: (a) whether Cloud 1 would actually commence a lawsuit against the County if the application was denied; (b) whether notice of the Application should have exceeded the requirements under the County Code; (c) concerns over the potential for the tower to cause damage if it fell; (d) a more rurally located tower would accomplish the same objectives as Cloud 1's proposal; and (e) a denial may cause Cloud 1 to apply for a tower in a different location.

31. At the conclusion of the deliberation, the Board voted against Cloud 1's Application, with 15 members of the Board voting to deny and 7 members of the Board voting to approve the Application.

DocID: 4826-2790-4925.1

32. Nathan Sampson of the County Zoning, Planning and Land Information Department, authored a letter dated June 28, 2019 addressed to Cloud 1, which provided written notice of the Application's denial by stating:

> This letter is to satisfy the notification requirements in Wisconsin Statute s.66.0404(2)(d)3 and 4.
>
> The La Crosse County Board on June 20, 2019 voted to deny Conditional Use Permit No. 1099 to construct a mobile service support structure on property owned by D&G Servais Revocable Trust, W5050 Knobloch Rd, La Crosse, WI, 54601. This parcel is described as part of the SW/NE of Section 12, T15N, R7W, Town of Shelby.
>
> The concern for the safety, health and welfare of the general public through the transmission of electromagnetic radiation is the reason the Board denied this application. The results of numerous studies regarding transmission of electromagnetic radiation are inconclusive regarding the health impacts on the general public.

33. The Telecommunications Act of 1996 expressly preempts local governments from regulating the placement and construction of wireless telecommunications facilities based on concerns of health risks from radio frequency emissions. Indeed, at the June 3, 2019, the County Planning, Resources and Development Committee meeting, the Committee was reminded that health risks could not be used to evaluate the location of communications towers. County Deputy Corporation Counsel Amy Flottmeyer also reminded the Board on numerous occasions during its June 20, 2019 deliberations that the Board could not regulate cell towers via environmental testing, sampling monitoring or radio frequency/safety concerns.

34. In 2015, Verizon Wireless also filed a conditional use permit application to construct a wireless communications tower at the W5050 Knobloch Road property. The County Planning, Resources and Development Committee held a public hearing on Verizon Wireless' application on September 28, 2015, and on that same date, the County, Planning, Resources and Development Committee unanimously recommended approval of the proposed tower by a 7-0

9

vote. Thereafter, the Board considered Verizon Wireless' conditional use application on October 15, 2015, unanimously approving the proposed tower by a 25-0 vote.

35. Verizon Wireless never constructed a tower pursuant to the conditional use approval granted by the Board. However, given the Board's unanimous approval of Verizon Wireless' proposed tower on the W5050 Knobloch Road property, the Board's subsequent denial of Cloud 1's Application is arbitrary, capricious, oppressive and otherwise unreasonable, and the evidence surrounding Cloud 1's Application was such that the Board could not reasonably or legally deny Cloud 1's Application.

### FIRST CLAIM FOR RELIEF
(Violation of 47 U.S.C. § 332(c)(7)(B)(iii) – Substantial Evidence)

36. Cloud 1 restates and incorporates by reference the allegations above.

37. The Board's denial of the Cloud 1's Application for a conditional use permit violates the Telecommunications Act of 1996 because it is not supported by substantial evidence in a written record.

38. As result of the Board's decision to deny the Application, Cloud 1 has suffered and will continue to suffer irreparable harm.

### SECOND CLAIM FOR RELIEF
(Violation of 47 U.S.C. § 332(c)(7)(B)(iv) – Improper Consideration of Health Effects)

39. Cloud 1 restates and incorporates by reference the allegations above.

40. The Board's denial of the Application violates the Telecommunications Act of 1996 because it was based on the environmental effects of radio frequency emissions. 47 U.S.C. § 332(c)(7)(B)(iv).

41. As a result of the Board's decision to deny Cloud 1's Application, Cloud 1 has suffered and will continue to suffer irreparable harm.

DocID: 4826-2790-4925.1

## THIRD CLAIM FOR RELIEF
### (Violation of Wis. Stat. § 66.0404 and Wisconsin State Law Certiorari Review)

42. Cloud 1 restates and incorporates by reference the allegations above.

43. The Board's denial of Cloud 1's Application violated Wis. Stat. § 66.0404(2)(d)4. and state common law entitling Cloud 1 to certiorari review from this Court because:

    (a) The Board proceeded on one or more incorrect theories of law;

    (b) The Board's decision was arbitrary, oppressive and unreasonable and represented its will and not its judgment; and

    (c) The Board's decision was not based on substantial evidence in the record.

44. As a result of the Board's decision denying the Application, Cloud 1 has suffered and will continue to suffer irreparable harm.

**WHEREFORE**, Cloud 1 respectfully requests the following relief:

A. Expedited review and disposition of this action pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

B. An Order from this Court declaring that Defendants violated 47 U.S.C. § 332(c)(7)(B)(iii) by failing to support their denial of the Application with substantial evidence in the written record;

C. An Order from this Court declaring that Defendants violated Wis. Stat. § 66.0404;

D. An injunction requiring that the Board grant Cloud 1's application for a conditional use permit as proposed;

E. An award of Cloud 1's costs, including such reasonable attorney's fees as may be allowable under law; and

F. Such other and further relief as this Court may deem just and proper.

11

Date: July 22, 2019

By: *s/ Rodney W. Carter*
Rodney W. Carter
WI State Bar No. 1001258
James C. Remington
WI State Bar No. 1079773

Attorneys for Cloud 1, LLC

**HUSCH BLACKWELL LLP**
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
414.273.2100
Rodney.Carter@huschblackwell.com
Jake.Remington@huschblackwell.com